# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ALLIANCE OPHTHALMOLOGY, PLLC, )
DALLAS RETINA CENTER, PLLC, and )
TEXAS EYE AND CATARACT, PLLC, on )
behalf of themselves and all others similarly )
situated, )
                       Plaintiffs, )
                    v. )         1:22CV296
ECL GROUP, LLC, )
                       Defendant. )

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

This matter comes before the Court on Defendant ECL Group, LLC's Motion to Dismiss two counts in Plaintiffs' First Amended Complaint pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6). (ECF No. 22.) Defendant seeks to dismiss Count Five, a fraud claim, and Count Six, a violation of the North Carolina Unfair and Deceptive Trade Practices Act claim, N.C. Gen. Stat. § 75-1.1, *et seq.* (*Id.*) For the reasons that follow, Defendant's motion will be denied.

## I. BACKGROUND

According to the Complaint, Defendant is a vendor that provides data management services to medical practices. (ECF No. 14 at 1–2.) These data management services include storing patient medical records, patient billing, and "associated practice management support."

(*Id.* at 2.)  Plaintiffs Alliance Ophthalmology, PLLC, Dallas Retina Center, PLLC, and Texas Eye and Cataract, PLLC, are medical providers who contracted with Defendant for these data management services.  (*Id.* at 1–2.)  The contracts between Defendant and Plaintiffs included provisions requiring Defendant to, among other things, keep patient data secure and notify customers if there was a security breach involving patient data.  (*Id.* ¶ 23.)  These contracts also provided that customers were entitled to a discount if Defendant's service was offline for longer than a specified period of time.  (*Id.* ¶ 20.)

Throughout the year 2021, Defendant experienced a series of ransomware attacks that made its services inaccessible to its customers, including Plaintiffs, for significant periods of time.  (*Id.* ¶¶ 33–85.)  Defendant's response to the ransomware attacks included, among other things, sending mass emails to Plaintiffs apprising them of the situation.  (*Id.* ¶¶ 42, 61, 66, 83.)  According to Plaintiffs, these mass emails "contained intentional omissions and material misrepresentations." (*Id.*)

Based on these events and others not recounted here, Plaintiffs brought the instant six-count Complaint.  Four of those counts are for breach of contract and are not relevant to Defendant's motion.  (*Id.* ¶¶ 110–28.)  The remaining two counts—one for fraud and the other for unfair and deceptive trade practices—are both based on the alleged misrepresentations in Defendant's mass emails following the ransomware attacks discussed above, (*id.* ¶¶ 129–53) and are the subject of the motion before the Court, (ECF No. 22).

## II.  STANDARD OF REVIEW

A motion made under Rule 12(b)(6) challenges the legal sufficiency of the facts in the complaint, specifically whether the complaint satisfies the pleading standard under Rule 8(a)(2).  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).  Rule 8(a)(2) requires a "short

and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 570 (2007)). A claim is plausible when the complaint alleges sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 709 (4th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). The court "view[s] the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

## III.  DISCUSSION

In its motion, Defendant sets forth two major arguments. Defendant first argues that Plaintiffs have not pled sufficient facts to satisfy Federal Rules of Civil Procedure 8 and 9(b) for either their fraud claim, or their unfair and deceptive trade practices claim. (ECF No. 23 at 4.) Defendant also argues that Plaintiffs claims here are barred because under North Carolina law a litigant cannot premise a tort claim on a breach of contract.[1] (ECF Nos. 23 at 4, 7; 28 at 7.)

The Court will begin its analysis with Plaintiff's claim of fraud.

### A.  Plaintiffs Have Sufficiently Alleged Fraud

Defendant specifically argues that Plaintiffs' fraud claim should be dismissed because Plaintiffs have made only "threadbare, conclusory allegations" that are "speculative" and therefore do not support any inference of fraud, much less at the level of specificity required by Rule 9(b). (ECF No. 23 at 10.) According to Defendant: (1) the Complaint "do[es] not at any point assert that [Defendant's] representations . . . were literally false," (2) contains "no

---

[1] The parties agree that North Carolina law governs the claims at issue in Defendant's motion. (ECF Nos. 23 at 6, 9; 26 at 7, 14 n.4.)

3

specific facts . . . about [Defendant's] intentions or motivations," and (3) generally sets out facts that should be interpreted as showing that Defendant acted in good faith. (*Id.* at 7–9, 11.) With respect to Defendant's second major argument, as mentioned earlier, Defendant argues that Plaintiffs' fraud claim "attempts to turn a contract dispute into a punitive tort action (in contravention of North Carolina substantive law)." (ECF No. 23 at 10.)

"To allege a claim for fraud in North Carolina, a party must plead five 'essential elements: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage.'" *TSC Rsch., LLC v. Bayer Chems. Corp.*, 552 F. Supp. 2d 534, 543 (M.D.N.C. 2008) (quoting *Breeden v. Richmond Cmty. Coll.*, 171 F.R.D. 189, 194 (M.D.N.C. 1997)).

"Not only must these elements [of fraud] be pled, but under Fed. R. Civ. P. 9(b) 'the circumstances constituting fraud or mistake shall be stated with particularity . . . .'" *Id.* "Courts construe this to mean that plaintiffs must set out the 'time, place, and contents of the alleged fraudulent misrepresentation, as well as the identity of each person making the misrepresentation and what was obtained thereby.'" *Id.* (quoting *Breeden*, 171 F.R.D. at 195). In applying this rule, the Fourth Circuit has cautioned that "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).

Here, Plaintiffs have set forth in the Complaint a series of email communications sent to them by Defendant that Plaintiffs argue constitute false representations or concealments of

4

the fact that Defendant suffered a ransomware attack affecting Plaintiff's data. (ECF No. 14 ¶¶ 42, 61, 66, 83.) Specifically, Plaintiffs allege that the emails hid that Defendant had suffered a ransomware attack by stating that Defendant was suffering "technical issue[s]" or "performance issues," (*id.* ¶¶ 42, 50, 61, 63), claimed that "no data ha[d] been lost or compromised" when data had in fact been lost/compromised, (*id.* ¶¶ 42, 50), and continually made unfulfilled promises that the "technical issue[s]" would be fixed by certain dates, (*id.* ¶ 50). Plaintiffs allege that Defendant made these statements to prevent Plaintiffs from leaving Defendant for a competitor, (*id.* ¶ 52), and to prevent Plaintiffs from pursuing their contractual rights to discounts for downtime, (*id.* ¶ 36). In addition to these allegations, Plaintiffs' Complaint includes allegations setting out what email address Defendant sent these alleged fraudulent communications from, the date and time that the communications were sent, and extensive quotations from the communications. (*Id.* ¶¶ 42, 61, 66, 83.) Also, in some places Plaintiffs have added bold and italic emphasis on portions of the reproduced communications to focus attention on the parts of the communications particularly relevant to their claims. (*See id.* ¶¶ 42, 83.)

Upon examination of the allegations in the Complaint that Plaintiffs have identified as pertaining to the two claims at issue here, the Court concludes that Plaintiffs' allegations are neither speculative nor devoid of factual specificity as argued by Defendant and thus easily satisfy the requirement of Rule 8. Moreover, the level of specificity of the allegations place Defendant on notice of the alleged fraudulent circumstances that Plaintiffs claim, so as to allow Defendant to prepare its defense. Thus, the Court likewise concludes that the allegations satisfy the requirement under Rule 9(b) that Plaintiffs set out the "time, place, and contents"

of a misrepresentation, "as well as the identity of each person making [it]." *TSC Rsch.*, 552 F. Supp. 2d at 543.

The Court will now address each of Defendant's arguments in turn.

Defendant's contention that the Complaint does not at any point assert that Defendant's representations in the emails sent were false, (ECF No. 23 at 8), is incorrect, and further, even if Defendant's contention were true, there is little question that the Complaint does allege the concealment of material fact. The law is clear that either a false representation or a concealment of fact would satisfy the first element of a fraud claim. Plaintiffs have identified specific paragraphs of their Complaint which quote Defendant making statements that Plaintiffs argue falsely represented or concealed the reason why Defendant was not providing normal services. (ECF No. 26 at 14.) The Court concludes that Plaintiffs in the Complaint have pled at least two false representations or concealments of material fact related to the nature of the service outages.

First, according to the Complaint, from March 22, 2021, through March 26, 2021, despite knowing that it was experiencing service outages due to a ransomware attack, (ECF No. 14 ¶ 39), Defendant sent out a series of mass emails to Plaintiffs that repeatedly described the service outage as "technical issues," (*id.* ¶ 42). Generally, a "technical issue" is a problem caused by mistake or accident that affects the operation of a system. In contrast, a ransomware attack involves the introduction of "a form of malware designed to encrypt files on a device, rendering any files and the systems that rely on them unusable" so that "[m]alicious actors [can] then demand ransom in exchange for decryption."[2] The Court finds that Defendant

---

[2] *Stop Ransomware*, Cybersecurity & Infrastructure Sec. Agency, https://www.cisa.gov/stopransomware (last visited Feb. 23, 2023); *see also How We Can Help You - Ransomware*, FBI, https://www.fbi.gov/how-we-can-help-you/safety-resources/scams-and-safety/common-scams-and-crimes/ransomware (last visited Feb. 23, 2023) ("Ransomware is a type

6

describing an unresolved ransomware attack as a mundane "technical issue" either pleads an outright false representation or at the very least the concealment of a material fact to hide from Plaintiffs the true nature and severity of the situation surrounding the protection of their data. This same analysis applies to Plaintiffs' additional allegations that Defendant used terms such as "performance issues," (ECF No. 14 ¶ 61), "coding issues," (*id.* ¶ 66), and "intermittent system issues," (*id.* ¶ 83), during subsequent ransomware attacks.

Second, in one of the March emails, Defendant made a claim that "no data ha[d] been lost or compromised." (*Id.* ¶ 42.) Defendant could not truthfully assure Plaintiffs that data was neither lost nor compromised while that data was being held hostage. Indeed, even after Defendant resolved the attack, it had "permanently lost" some patient data. (*Id.* ¶ 48.) Thus, this too pleads either a false representation or a concealment of a material fact.

Accordingly, the Court finds that Plaintiffs have sufficiently pled that Defendant made false representations or concealed material facts in the identified communications.

The Court next addresses Defendant's argument that the claim should be dismissed because "there are no specific facts in the . . . complaint about [Defendant's] intentions or motivations." (ECF No. 23 at 8.) This too is incorrect. The Complaint specifically alleges that Defendant sought to hide facts that would cause Plaintiffs to switch vendors, and that Defendant also sought to characterize what had occurred in a manner that would induce Plaintiffs to pay invoices under their contract with Defendant when no monies should have been owed. (ECF No. 14 at 2 (connecting the misrepresentations to a motive of

---

of malicious software, or malware, that prevents you from accessing your computer files, systems, or networks and demands you pay a ransom for their return. . . . Once the [ransomware] is loaded on a computer, it will lock access to the computer itself or data and files stored there. More menacing versions can encrypt files and folders on local drives, attached drives, and even networked computers.").

7

"encourag[ing] physicians not to move to new service providers" and "invoice[ing] . . . for services that were never provided"); *see also id.* ¶¶ 36, 52, 84.) Accepting Plaintiffs' allegations as true, as the court is required to do, and drawing all inference in their favor a reasonable juror could infer that Defendant's email communications were reasonably calculated to deceive and were made with the intent to deceive. Moreover, Defendant's argument is not persuasive since a plaintiff alleging fraud does not need to plead specific facts regarding a defendant's knowledge or intent when making a false representation. Fed. R. Civ. P. 9(b); *see also Aloi v. Moroso Inv. Partners, LLC,* No. CIV.A. 11-2591, 2012 WL 4341741, at *5 (D. Md. Sept. 20, 2012) (rejecting defendant's argument that plaintiff had not alleged any facts to show knowledge or intent because "the second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge . . . and of defendant's intent" (quoting *Harrison*, 176 F.3d at 784)). The Court finds that Plaintiffs' allegations of intent are more than sufficient. (*See, e.g.*, ECF No. 14 ¶ 36 ("[Defendant] initially tried to hide what happened from its clients in order to keep them from exercising their remedies under [their] contracts and to avoid having to make the fee concessions required under those contracts."); *id.* ¶¶ 50, 52 ("[D]espite knowing that it had experienced an attack, [Defendant] . . . misrepresented the attack as a mundane 'technical issue' . . . . in an attempt to retain [Plaintiffs as] licensees and to induce [Plaintiffs] to continue their contractual relationship with [Defendant].").)

Nor does the Court find Defendant's argument that allegations in the Complaint demonstrate that it acted in good faith persuasive. (*See* ECF No. 23 at 11.) This amounts to an argument that the Court should rely on certain facts alleged in the Complaint to draw specific inferences rebutting the scienter allegations discussed immediately above. However, since this matter is before the Court on a motion to dismiss under Rule 12(b)(6), the Court

8

views the facts in the Complaint in the light most favorable to Plaintiffs and draws all inferences in their favor.

The Court will next address Defendant's second principal argument that Plaintiff's claim is barred because it is merely a contract claim. (ECF Nos. 23 at 10; 28 at 2, 7–8.)

Under North Carolina's "economic loss rule," "[o]rdinarily, a breach of contract does not give rise to a tort action by the promisee against the promisor." *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018) (quoting *N.C. State Ports Auth. v. Lloyd A. Fry Roofing Co.*, 240 S.E.2d 345, 350 (N.C. 1978)). "A 'tort action must be grounded on a violation of a *duty* imposed by operation of law,' not a violation of a duty arising purely from 'the contractual relationship of the parties.'" *Id.* (quoting *Rountree v. Chowan County*, 796 S.E.2d 827, 831 (N.C. Ct. App. 2017)). "Thus, a 'tort action does not lie against a party to a contract who simply fails to properly perform the terms of the contract.'" *Id.* (quoting *Rountree*, 796 S.E.2d at 830). "Accordingly, 'North Carolina law requires' courts 'to limit plaintiffs' tort claims to only those claims which are 'identifiable' and distinct from the primary breach of contract claim.'" *Id.* (quoting *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 346 (4th Cir. 1998)).

However, the North Carolina's economic loss rule does not bar properly pled claims for fraud. "The law is, in fact, to the contrary: a plaintiff may assert both claims, although [they] may be required to elect between [their] remedies prior to obtaining a verdict." *Jones v. Harrelson & Smith Contractors, LLC*, 670 S.E.2d 242, 250 (2008), *aff'd*, 677 S.E.2d 453 (N.C. 2009); *see also In re NC & VA Warranty Co.*, 594 B.R. 316, 352 (Bankr. M.D.N.C. 2018) ("The economic loss rule does not apply to [p]laintiff's claims for fraud."); *Bradley Woodcraft, Inc. v. Bodden*, 795 S.E.2d 253, 259 (N.C. Ct. App. 2016) (holding that "while claims for negligence

9

are barred by the economic loss rule where a valid contract exists between the litigants, claims for fraud are not so barred"). Accordingly, where a plaintiff pleads fraud and breach of contract together and a defendant moves to dismiss based on the economic loss rule, as it appears Defendant is doing here, "[t]he pertinent question [is]: Does [plaintiff] sufficiently allege fraud?" *Prassas Cap., LLC v. Blue Sphere Corp.*, No. 17-CV-131, 2018 WL 1567362, at *5 (W.D.N.C. Mar. 30, 2018); *see also LifeBrite Hosp. Grp. of Stokes, LLC v. Blue Cross & Blue Shield of N.C.*, No. 18-CV-293, 2022 WL 801646, at *4 (M.D.N.C. Mar. 16, 2022) (addressing the economic loss rule and determining that "[b]ecause a fraud claim may be brought in addition to a breach of contract claim, the question becomes whether [the plaintiff] sufficiently alleged fraud").[3]

Having already addressed and rejected Defendant's arguments regarding whether Plaintiffs have sufficiently pled the elements of fraud, the Court concludes that Plaintiffs have sufficiently alleged fraud to withstand a motion to dismiss at this stage of the litigation. The Court will therefore deny Defendant's motion as to Plaintiffs' fraud claim.

### B. Plaintiffs Have Sufficiently Alleged Unfair and Deceptive Trade Practices

Because the Court finds that Plaintiffs have sufficiently alleged fraud, the Court need not separately address whether Plaintiffs have sufficiently alleged unfair and deceptive trade practices. "[P]roof of fraud necessarily constitutes a violation of the prohibition against unfair

---

[3] Defendant also argues in its reply brief that the fraud claim fails because Plaintiffs did not plead that the fraud was accompanied by aggravating circumstances. (ECF No. 28 at 7.) It is not clear whether Defendant considers this argument to be distinct from its argument that Plaintiffs' claim sounds only in contract. Regardless of how Defendant intended to structure its contentions, under North Carolina law, "actionable fraud [b]y its very nature involves intentional wrongdoing" and "is, itself, one of the elements of aggravation which will permit punitive damages to be awarded." *Newton v. Standard Fire Ins. Co.*, 229 S.E.2d 297, 301–022 (1976). Thus, failure to plead aggravating circumstances in addition to an otherwise proper plea of fraud is not a reason to dismiss the claim. *See id.* at 302 (holding that North Carolina law does not distinguish between "simple" and "aggravated" fraud).

10

and deceptive trade practices." *Powell v. Wold*, 362 S.E.2d 796, 800 (N.C. Ct. App. 1987) (quoting *Webb v. Triad Appraisal & Adjustment Serv., Inc.*, 352 S.E.2d 859, 862 (N.C. Ct. App. 1987)). Therefore, where, as here, a plaintiff adequately pleads fraud with sufficient particularity, that plaintiff also pleads unfair and deceptive trade practices with sufficient particularity. *Angell v. Kelly*, 336 F. Supp. 2d 540, 550 (M.D.N.C. 2004) ("[B]y adequately pleading their fraud and negligent misrepresentation claims, [p]laintiffs have also pleaded their claim of unfair and deceptive trade practices with sufficient particularity."); *Hunter v. Guardian Life Ins. Co. of Am.*, 593 S.E.2d 595, 601 (N.C. Ct. App. 2004) ("Since plaintiffs have alleged facts which, if proven, could support a finding of fraud, they have also alleged facts which could support a finding of unfair and deceptive trade practices.").

Accordingly, the Court finds that Plaintiffs have stated a claim for unfair and deceptive trade practices and will deny Defendant's motion with respect to this claim at this stage of the litigation.

For the reasons stated herein, the Court enters the following:

## ORDER

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss, (ECF No. 22), is **DENIED**.

This, the 6th day of March 2023.

/s/ Loretta C. Biggs
United States District Judge